## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KEVIN L. DICKENS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. No. 10-786-LPS |
| | : | |
| COMM. CARL DANBERG, et al., | : | |
| | : | |
| Defendants. | : | |

Kevin L. Dickens, James T. Vaughn Correctional Center, Smyrna, Delaware, Pro Se Plaintiff.

## MEMORANDUM OPINION

June 8, 2012
Wilmington, Delaware

STARK, U.S. District Judge:

## I.    **INTRODUCTION**

Plaintiff Kevin L. Dickens ("Plaintiff"), filed this action pursuant to 42 U.S.C. § 1983

alleging violations of his constitutional rights.[1]  Plaintiff is an inmate housed at the James T.

Vaughn Correctional Center "(VCC")" in Smyrna, Delaware.  He appears *pro se* and has been

granted leave to proceed *in forma pauperis*.  (D.I. 13)  The Court proceeds to review and screen

the Complaint pursuant to 28 U.S.C. § 1915 and § 1915A.[2]

## II.    **BACKGROUND**

Plaintiff raises numerous claims including excessive force, failure to protect or intervene,

medical needs, retaliation,[3] conspiracy, and deprivation of property for alleged acts occurring

from May 6, 2008 through May 10, 2010.  He seeks compensatory and punitive damages as well

as injunctive relief.

---

[1]Pursuant to 42 U.S.C. § 1983, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *See West v. Atkins,* 487 U.S. 42, 48 (1988).

[2]The Complaint named additional plaintiffs Roman Shankaras ("Shankaras") and Thomas Gordon ("Gordon").  Because Shankaras' and Gordon's claims were unrelated, new cases were opened for them.  The Court does not consider, and strikes, Shankaras' and Gordon's allegations found at paragraphs 7 and 8 of the Complaint.  (D.I. 2)

[3]Plaintiff alleges numerous times that Defendants retaliated against him, but uses the term in a conclusory manner.  "Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under § 1983." *White v. Napoleon,* 897 F.2d 103, 111-12 (3d Cir. 1990).  Proof of a retaliation claim requires that Plaintiff demonstrate (1) he engaged in protected activity; (2) he was subjected to adverse actions by a state actor; and (3) the protected activity was a substantial motivating factor in the state actor's decision to take adverse action. *See Rauser v. Horn,* 241 F.3d 330, 333 (3d Cir. 2001) (citing *Mt. Healthy Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977)); *see also Allah v. Seiverling,* 229 F.3d 220 (3d Cir. 2000).  Plaintiff's sparse and conclusory retaliation allegations are frivolous and will be dismissed.

## III.   LEGAL STANDARDS

This Court must dismiss, at the earliest practicable time, certain *in forma pauperis* and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (internal quotation marks omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(I) and § 1915A(b)(l), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 at 327-28; *see also Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took inmate's pen and refused to give it back).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(l) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). However,

2

before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the Court must grant Plaintiff leave to amend his complaint, unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F .3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Iqbal*, 129 S.Ct. at 1949. When determining whether dismissal is appropriate, the Court conducts a two-part analysis. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements of a claim are separated. *Id.* The Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* at 210-11. Second, the Court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 211. In other words, the complaint must do more than allege the plaintiff's entitlement to relief; rather, it must "show" such an entitlement with its facts. *Id.* A claim is facially plausible when its factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See Iqbal*, 129 S.Ct. at 1949. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

3

## IV.    DISCUSSION

### A.    Statute of Limitations

Paragraphs 1, 2, 3, and 4 raise claims that occurred on May 6 and 11, 2008 and in July and August 2008.  These claims are time-barred.

For purposes of the statute of limitations, § 1983 claims are characterized as personal injury actions.  *See Wilson* v. *Garcia,* 471 U.S. 261, 275 (1983).  Hence, in Delaware, § 1983 claims are subject to a two-year limitations period.  *See* 10 Del. C. § 8119; *Johnson v. Cullen,* 925 F.Supp. 244, 248 (D. Del. 1996).  Section 1983 claims accrue "when plaintiff knows or has reason to know of the injury that forms the basis of his or her cause of action." *Id.*  Claims not filed within the two-year statute of limitations period are time-barred and must be dismissed.  *See Campanello v. Port Auth. of New York & New Jersey,* 590 F. Supp. 2d 694, 700 (D.N.J. 2008).

The statute of limitations is an affirmative defense that generally must be raised by the defendant, and it is waived if not properly raised.  *See Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P.,* 435 F.3d 396, 400 n.14 (3d Cir. 2006); *Fassett v. Delta Kappa Epsilon,* 807 F.2d 1150, 1167 (3d Cir. 1986).  However, when the statute of limitations defense is obvious from the face of the complaint and no development of the factual record is required to determine whether dismissal is appropriate, *sua sponte* dismissal under 28 U.S.C. § 1915 is permissible.  *See Smith v. Delaware Cnty. Court,* 260 F. App'x 454, 455 (3d Cir. Jan. 10, 2008) (not published).

4

Plaintiff's Complaint was signed on September 12, 2010, and is postmarked September 15, 2010.[4] In paragraphs 1 through 4, the Complaint raises claims for actions that took place on May 6 and 11, 2008, and in July and August 2008. With regard to these claims, Plaintiff filed his Complaint after the expiration of the two-year limitations period. Thus, it is evident from the face of the Complaint that the claims pled in paragraphs 1, 2, 3, and 4 are barred by the two-year limitations period. Therefore, the Court will dismiss these claims as time-barred pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

**B.      Personal Involvement/Respondeat Superior**

Plaintiff raises claims against certain defendants based upon their supervisory positions, for allegedly implementing unconstitutional policies and enforcing them. Plaintiff alleges that he spoke to Warden Perry Phelps ("Phelps") about a September 2008 beating by Sgt. Beckles ("Beckles"), and Phelps told Plaintiff "to be patient." (D.I. 2 at ¶ 6) Plaintiff alleges that instead of ordering an investigation, Phelps and Deputy Warden Pierce ("Pierce") gave Beckles a "slap on the wrist" by removing Beckles as the building sergeant.[5]

Plaintiff alleges that there is a "get Dickens" policy and that Phelps, two majors, and all of the captains and lieutenants were notified that, as part of the policy, Plaintiff could not dictate

---

[4]The computation of time for complaints filed by *pro se* inmates is determined according to the "mailbox rule." *See Houston v. Lack,* 487 U.S. 266 (1988); *Burns v. Morton,* 134 F.3d 109, 112 (3d Cir. 1998). This district has extended the mailbox rule to *pro se* § 1983 complaints. *See Gibbs v. Decker,* 234 F. Supp. 2d 458,463 (D. Del. 2002). Plaintiff's Complaint was signed on September 12, 2010 and, therefore, must have been delivered to prison authorities for mailing on or after that date. Thus, the Court finds that the Complaint was filed no earlier than September 12, 2010.

[5]Plaintiff alleges that because Beckles was allowed to have contact and direct supervision, he could continue to retaliate against Plaintiff.

prison policy or who cuffed him and to assemble a Quick Response Team ("QRT") to assault Plaintiff when he refused to allow a particular guard to handcuff him. (D.I. 2 at ¶ 14) The policy was continued by Captain Hazzard ("Hazzard") and Captain Henry ("Henry"). As part of the policy, Captain Rispoli ("Rispoli") ordered area lieutenants to initiate assaults by spraying Plaintiff with mace whenever he refused a verbal order. QRT would be called "to finish" the job.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). The Third Circuit has reiterated that a § 1983 claim cannot be premised upon a theory of respondeat superior and that, in order to establish liability for deprivation of a constitutional right, a party must show personal involvement by each defendant. *See Brito v. United States Dep't of Justice*, 392 F. App'x 11, 14 (3d Cir. Aug. 18, 2010) (not published) (citing *Iqbal*, 556 U.S. at 677; *Rode*, 845 F.2d at 1207).

"Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S.Ct. at 1948. In *Iqbal*, the Supreme Court emphasized that "[i]n a § 1983 suit – here masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 129 S.Ct. at 1949. "Thus, when a plaintiff sues an official under § 1983 for conduct 'arising from his or her superintendent

6

responsibilities,' the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010) (quoting *Iqbal*, 129 S.Ct. at 1949). The factors necessary to establish a § 1983 violation will vary with the constitutional provision at issue. *See id.*

Under pre-*Iqbal* Third Circuit precedent, supervisory personnel are liable under § 1983 if they participated in, or had knowledge of, violations; if they directed others to commit violations; or if they had knowledge of and acquiesced in subordinates' violations. *See Baker v. Monroe Twp.*, 50 F.3d 1186, 1191 (3d Cir. 1995). More recently, the Third Circuit reiterated that a § 1983 claim cannot be premised upon a theory of respondeat superior and, that in order to establish liability for deprivation of a constitutional right, a party must show personal involvement by each defendant. *See Brito*, 392 F. App'x at 11. The Third Circuit noted that personal involvement may be established through: (1) personal direction or actual participation by the defendant in the misconduct; or (2) knowledge of and acquiescence in the misconduct. *See id.* The Third Circuit has recognized the potential effect that *Iqbal* might have in altering the standard for supervisory liability in a § 1983 suit. *See, e.g., Bayer v. Monroe County Children and Youth Servs.*, 577 F.3d 186, 190 n.5 (3d Cir. 2009) (stating, post-*Iqbal*, it is uncertain whether proof of personal knowledge, with nothing more, provides sufficient basis to impose liability upon supervisory official). The Third Circuit has recognized the potential effect that *Iqbal* might have in altering the standard for supervisory liability in a § 1983 suit but, to date, has declined to decide whether *Iqbal* requires narrowing of the scope of the test. *See Santiago v. Warminster Twp*, 629 F.3d 121, 130 n.8 (3d Cir. 2010); *see also Argueta v. United States Immigration and*

7

*Customs Enforcement*, 643 F.3d 60 (3d Cir. 2011) ("To date, we have refrained from answering the question of whether *Iqbal* eliminated – or at least narrowed the scope of – supervisory liability because it was ultimately unnecessary to do so in order to dispose of the appeal then before us."). Hence, it appears that, under a supervisory theory of liability, and even in light of *Iqbal*, personal involvement by a defendant remains the touchstone for establishing liability for the violation of a plaintiff's constitutional right.[6] *See Williams v. Lackawanna County Prison*, 2010 WL 1491132, at *5 (M.D. Pa. Apr. 13, 2010).

Facts showing personal involvement of the defendant must be asserted; such assertions may be made through allegations of specific facts showing that a defendant expressly directed the deprivation of a plaintiff's constitutional rights or created such policies where the subordinates had no discretion in applying the policies in a fashion other than the one which actually produced the alleged deprivation; *e.g.*, supervisory liability may attach if the plaintiff asserts facts showing that the supervisor's actions were "the moving force" behind the harm suffered by the plaintiff. *See Sample*, 885 F.2d at 1117-18; *see also Iqbal*, 129 S.Ct. at 1949-54; *City of Canton v. Harris*, 489 U.S. 378 (1989); *Heggenmiller v. Edna Mahan Corr. Inst. for Women*, 128 F. App'x 240 (3d Cir. Apr. 11, 2005) (not published).

Plaintiff's allegations that the supervisory defendants created, approved, and implemented policies are similar to the allegations to *Iqbal* that were determined to be facially insufficient.

---

[6]"'Supervision' entails, among other things, training, defining expected performance by promulgating rules or otherwise, monitoring adherence to performance standards, and responding to unacceptable performance whether through individualized discipline or further rulemaking." *Sample v. Diecks*, 885 F.2d 1099, 1116 (3d Cir. 1989). "For the purpose of defining the standard for liability of a supervisor under § 1983, the characterization of a particular aspect of supervision is unimportant." *Id.* at 1116-17.

8

*See Iqbal*, 129 S.Ct. at 1949. In *Iqbal*, the plaintiff alleged supervisory officials violated his rights, in that one official was the "principal architect" of the policy, and another was "implemental" in adoption and execution of the policy. *See id.* at 1944. Here, Plaintiff's allegations are so vague and conclusory that they clearly do not satisfy the *Iqbal* requirement. He provides no specific facts as to how the supervisory officials violated his constitutional rights; rather he refers to the "get Dickens" policy that apparently went into effect whenever Plaintiff flouted prison rules and disobeyed orders. In addition, there are no allegations that subordinates lacked discretion in applying the alleged policy in a fashion other than the one which actually produced the alleged deprivation. Finally, prison officials require broad discretionary authority as the "operation of a correctional institution is at best an extraordinarily difficult undertaking." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). Hence, prison administrators are accorded wide-ranging deference in the adoption and execution of policies and practices that are needed to preserve internal order and to maintain institutional security. *See Bell v. Wolfish*, 441 U.S. 520, 527 (1979). It appears from reading the Complaint that the actions taken were to preserve internal order and to maintain institutional security and would be accorded deference.

For the above reasons, the Court will dismiss as frivolous the claims discussed above in paragraphs 6 and 14 pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and § 1915A(b)(1).

## C.    **Eighth Amendment**

### 1.    **Conditions of Confinement**

Plaintiff raises numerous claims relating to his conditions of confinement, including food tampering, denial of exercise, infrequent showers, constructive starvation, and reduced environmental stimulation.

9

A condition of confinement violates the Eighth Amendment only if it is so reprehensible as to be deemed inhumane under contemporary standards or such that it deprives an inmate of minimal civilized measure of the necessities of life. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson v. Seiter,* 501 U.S. 294, 298 (1991). When an Eighth Amendment claim is brought against a prison official it must meet two requirements: (1) the deprivation alleged must be, objectively, sufficiently serious; and (2) the prison official must have been deliberately indifferent to the inmate's health or safety. *See Farmer v. Brennan,* 511 U.S. 825, 834 (1994). Deliberate indifference is a subjective standard in that the prison official must actually have known or been aware of the excessive risk to inmate safety. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).

Plaintiff alleges that on January 2, 2009, C/Os Rebecca ("White"), Weber ("Weber"), and Thomas Keefer ("Keefer") retaliated against him by "playing" with his food, as his food tray was missing dessert, cornbread, and a spork. (D.I. 2 at ¶ 9) When Plaintiff held his tray to protest the tampering, Lt. Furman ("Furman") threatened Plaintiff with the QRT.[7]

In March 2009, Plaintiff complained to Lt. Smith ("Smith") about Della Boone ("Boone") and other officers tampering with his food. Boone denied tampering with the food, Plaintiff called her a liar, and Boone threatened to strike and mace Plaintiff. Plaintiff warned Boone that if she came to his cell door or flap "he would have something for her." (D.I. 2 at ¶ 9) The next

---

[7]Allegations of threats do not rise to the level of a constitutional violation. *See McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (stating taunts and threats did not constitute Eighth Amendment violation); *Prisoners' Legal Ass'n v. Roberson*, 822 F.Supp. 185, 189 (D.N.J. 1993) (stating verbal harassment does not violate inmate's constitutional rights). Similarly, allegations that prison personnel have used threatening language and gestures are not cognizable claims under § 1983. *See Collins v. Cundy*, 603 F.2d 825 (10th Cir. 1979) (involving allegations that defendant laughed at prisoner and threatened to hang him).

10

day, Rispoli, Major James Scarborough ("Scarborough"), Major Michael Costello ("Costello"), Lt. Karen Hawkins ("Hawkins"), and Smith allegedly ordered the QRT to escort Plaintiff from his cell to intimidate him.  In addition, Plaintiff alleges that Boone tampered with his food and contaminated it so that it was inedible.  (*Id.*)

Plaintiff fails to state a constitutional claim.  *See Jackson v. Kane County*, 2010 WL 333695, at *2 (N.D. Ill. Jan. 26, 2010) ("Drawing on judicial experience and common sense, a lack of running water in a particular prison cell block, although uncomfortable by itself, is not a serious deprivation of a basic human need.") (internal citations omitted).  Plaintiff's allegations that his tray was missing some food items and that on one day his food was inedible do not amount to cognizable claims and, therefore, the claims will be dismissed as frivolous.

Plaintiff alleges that Scarborough, Costello, Rispoli, and Hawkins punished him by ordering no exercise for three months.  (D.I. 2 at ¶ 10)  "[M]eaningful recreation 'is extremely important to the psychological and physical well-being of the inmates.'" *Peterkin v. Jeffes*, 855 F.2d 1021, 1031 (3d Cir. 1988) (quoting *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979)). However, lack of opportunity to exercise can only rise to a constitutional level "where movement is denied and muscles are allowed to atrophy, [and] the health of the individual is threatened." *Spain*, 600 F.2d at 199.  Thus, while a constitutional violation may occur when the deprivation of exercise extends for a prolonged period of time and tangible physical harm resulting from the lack of exercise is demonstrated, here there are so such allegations.  Therefore, the exercise claim will be dismissed as frivolous.

Plaintiff alleges that he was informed by Lt. Wiley ("Wiley"), Lt. Chris Cessna ("Cessna"), and Lt. Sennett ("Sennett") that he would only be permitted a fifteen minute shower

11

three times per week. (D.I. 2 at ¶ 10)  On one occasion, Plaintiff asked Sennett and Cessna for a

towel, soap, and clean clothes, but the items were not given to him and then Plaintiff was advised

that his time was up.  Plaintiff refused to come out of the shower and was threatened with bodily

harm.

Plaintiff had the opportunity for regularly scheduled showers, but on one occasion his

shower did not take place.  The deprivation Plaintiff allegedly suffered on this one occasion does

not constitute a denial of "the minimal civilized measures of life's necessities." *See, e.g.,*

*Williams v. Delo,* 49 F.3d 442, 444–47 (8th Cir. 1995) (finding no Eighth Amendment violation

where prisoner was placed in strip cell without clothes, water in cell was turned off and mattress

removed, and prisoner's bedding, clothing, legal mail, and hygienic supplies were withheld); *see*

*also Adderly v. Ferrier,* 2011 WL 816204 (3d Cir. Mar. 10, 2011).  The shower claim is

frivolous and will be dismissed.

Plaintiff alleges that he was "constructively starved" through a conspiracy by the

Correctional Medical Services ("CMS") staff, Dr. Brown ("Dr. Brown"), Dr. Dresoro ("Dr.

Desrosiers"),[8] Nurse Betty Bryant ("Bryant"), Cris Senato ("Senato"), and the VCC staff when he

was placed on a nutra-loaf diet for five straight weeks. (D.I. 2 at ¶ 10)  Plaintiff was placed on

the diet for throwing food and storing feces in his cell.  Plaintiff lost weight and Dr. Desrosiers

recommended that Plaintiff be given regular meals, but Deputy Warden Klein ("Klein") refused

to take Plaintiff off the nutra-loaf sanction.  Plaintiff was taken off the nutra-loaf only after

frequent blackouts, low blood pressure, and losing over sixty pounds in one month.

Prisoners must receive adequate nutrition to maintain normal health; the food need not be

---

[8]The correct spelling is Dr. Desrosiers.

tasty or aesthetically pleasing. *See Cunningham v. Jones*, 567 F.2d 653, 659-60 (6th Cir. 1977).

A food loaf diet does not violate the Eighth Amendment because nutritional and caloric

requirements are met. *See, e.g., Ostrander v. Trippett*, 71 F. App'x 565, 566 (6th Cir. Aug. 11,

2003) (not published); *see also LeMaire v. Maas,* 12 F.3d 1444, 1456 (9th Cir. 1993) (providing

nutra-loaf, a nutritionally adequate blend of fresh ingredients designed to be given to inmates

without eating utensils, is not deprivation serious enough to violate Eighth Amendment).

      With regard to the CMS staff, Dr. Brown, Dr. Desrosiers, Bryant, Senato, and the VCC

staff, Plaintiff has failed to state a cognizable claim under the Eighth Amendment. The

allegations as to Klein, however, are that medical indicated Plaintiff should be taken off the

nutra-loaf diet, the recommendation was not followed, and Plaintiff's health suffered. *See*

*Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001) (suggesting that prisoner who lost

forty-five pounds on nutra-loaf diet might have had Eighth Amendment claim); *Adams v.*

*Kincheloe,* 743 F.Supp. 1385, 1391 (E.D. Wash. 1990) (placing inmate on disciplinary five-day

diet of "nutra-loaf" did not violate Eighth Amendment in part because inmate did not suffer from

any weight loss or medical conditions). Accordingly, Plaintiff will be allowed to proceed against

Klein on the nutra-loaf claim.

      Plaintiff alleges that Costello and Rispoli tortured him by placing him in a cell with

reduced environmental stimulation, by covering his windows so he could not see outside of his

cell. (D.I. 2 at ¶ 10) Plaintiff did not know the time of day and was not in touch with his

surroundings. He does not indicate how long this condition lasted or that he was harmed, but

alleges the reduced environmental stimulation was meant to cause harm.

      "As a general matter, the mere placement in solitary confinement, despite its

13

accompanying extreme social isolation and reduced environmental stimulation – and the likelihood of some degree of psychological trauma that it entails – is not enough to rise to the level of an Eighth Amendment violation." *Washington-El v. Beard*, 2011 WL 891250, at *3 (W.D. Pa. Mar. 11, 2011) (internal quotation marks omitted). Administrative segregation, and its associated risk of psychological deterioration, "is not *per se* violative of the Eighth Amendment with respect to all potential inmates." *Id.* Plaintiff's allegations do not rise to the level of a constitutional violation. Moreover, there are no allegations of injury. Therefore, the claims will be dismissed as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

## 2.    **Excessive Force/Failure to Protect/Failure to Intervene**

Plaintiff makes numerous claims of excessive force, failure to protect, and failure to intervene.

When analyzing an excessive force claim under the Eighth Amendment, the Court must determine "whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). Use of force is actionable under § 1983 when it exceeds "that which is reasonable and necessary under the circumstances." *Davidson v. O'Lone*, 752 F.2d 817, 827 (3d Cir. 1984). The Court must determine whether the force was applied in good faith by weighing the following factors: (1) the need for the application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury inflicted, (4) the threat reasonably perceived by the responsible officials, and (5) the efforts made to temper the severity of a forceful response. *See Davis v. Carroll*, 390 F. Supp. 2d 415, 419 (D. Del. 2005) (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

14

The Eighth Amendment "does not protect an inmate against an objectively *de minimis* use

of force." *Smith v. Mensinger,* 293 F.3d 641, 649 (3d Cir. 2002). Allegations of far more force

than Plaintiff has alleged have been deemed *de minimis* and dismissed. *See, e.g., Reyes v.*

*Chinnici,* 54 F. App'x 44, 48 (3d Cir. Nov. 18, 2002) (not published) (involving corrections

officer punching inmate in shoulder to avoid being spit on); *Wilson v. Reinhart,* 2003 WL

21756393 (D. Del. Jul. 29, 2003) (spraying inmate in face with mace was in proportion to need to

stop plaintiff from causing disturbance in prison). *But see Soto v. Dickey,* 744 F.2d 1260, 1270

(7th Cir. 1984) ("[I]t is a violation of the Eighth Amendment for prison officials to use mace or

other chemical agents in quantities greater than necessary or for the sole purpose of punishment

or the infliction of pain."); *Foulk v. Charrier,* 262 F.3d 687, 701-02 (8th Cir. 2001) (stating

application of pepper spray when inmate is being compliant can constitute Eighth Amendment

violation).

To prevail on an Eighth Amendment failure to protect claim, a plaintiff is required to

show that (1) he is incarcerated under conditions posing a substantial risk of serious harm (the

objective element); and (2) prison officials acted with deliberate indifference, i.e., that prison

officials knew of and disregarded an excessive risk to inmate health or safety (the subjective

element). *See Farmer v. Brennan,* 511 U.S. 825, 833-34 (1994); *see also Griffin v. DeRosa,* 153

F. App'x 851 (3d Cir. Nov. 3, 2005) (not published).

With regard to paragraph 9, Plaintiff alleges that he hit Keefer and that Keefer pulled

Plaintiff away during an altercation. He alleges that when White "went for her mace," Plaintiff

tackled her and attempted to stop her from macing him. In each instance, Plaintiff was the

aggressor. The claims are frivolous and will be dismissed.

15

With regard to paragraph 10, Plaintiff alleges that Rispoli ordered staff to initiate contact with Plaintiff to justify an assault. Plaintiff alleges this began with mere touching or holding his arms and wrists while he was handcuffed and escalated to grabbing and yanking on Plaintiff in order to cause injury. The allegations do not rise to the level of excessive force, are frivolous, and will be dismissed.

With regard to paragraph 11, Plaintiff alleges that Sgt. Michael Bryan ("Bryan") slammed him into a wall as Plaintiff was talking to Lt. Daum ("Daum"), and Daum did not intervene or try to protect him. Plaintiff demanded that Bryan no longer be allowed to handcuff him, but Scarborough, Costello, and Rispoli ordered Plaintiff to allow Bryan to handcuff him. When Plaintiff refused, Lt. Paul Harvey ("Harvey"), Daum, Smith, and Lt. Stanley Baynard ("Baynard") allegedly fabricated incident and disciplinary reports that Plaintiff refused orders.[9] In order to deter Bryan from cuffing him, Plaintiff spread feces on his arms and wrists, which resulted in an appearance by the QRT and placement in twenty-four hour restraints.

Plaintiff alleges that on two other occasions in late March, Bryan slammed him to the floor; and on one occasion, Beckles joined the QRT members and thumbed Plaintiff in the eye. Plaintiff alleges that each time Bryan worked in his area it was clear he would be harmed, but the VCC staff, Phelps, Pierce, Klein, Internal Affairs, the Commissioner, and administration were deliberately indifferent despite his complaints to them. The allegations do not speak to injury to Plaintiff and indicate that acts taken by Defendants were in response to Plaintiff's behavior. The

---

[9]Plaintiff's claim that Defendants' actions resulted in the filing of false disciplinary charges, without more, does not violate his constitutional rights under the Due Process Clause. *See Smith v. Mensinger*, 293 F.3d 641, 653-54 (3d Cir. 2002).

Case 1:10-cv-00786-LPS  Document 15  Filed 06/08/12  Page 18 of 23 PageID #: 87

allegations in paragraph 11 do not rise to the level of excessive force, are frivolous, and will be dismissed.

In paragraph 12, Plaintiff alleges that when Bryan and C/O Nicholas Mohr ("Mohr") approached his cell he threw urine and feces on them. Smith assembled the QRT. During the incident, C/O William Morris ("Morris") shocked Plaintiff and Beckles broke Plaintiff's finger. Bryan waited in the hallway, grabbed and spat upon Plaintiff. Smith watched while Bryan ranted. Except for the allegations against Morris and Beckles, the allegations fail to state cognizable claims of excessive force.

Paragraph 13 alleges that on April 15, 2009, Rispoli sent Harvey and Bryan to Plaintiff's cell and ordered Plaintiff to allow Bryan to handcuff him. Plaintiff refused and spread feces on his arms and hands. An altercation with the QRT ensued. The allegations against the foregoing Defendants do not rise to the level of an Eighth Amendment violation.

In paragraph 14, Plaintiff alleges that on April 21, 2009, Henry yanked on his cuffs from behind while Plaintiff was cuffed and shackled. At one point, Henry threatened Plaintiff. Plaintiff complained to Baynard and told him that the QRT would be needed to cuff him because he would not allow Henry to cuff him. Baynard did not comply with Plaintiff's demands. Later, Rispoli arrived with the QRT and they left Plaintiff in the shower for five hours. Henry then cuffed Plaintiff and threw Plaintiff into the shower door. Plaintiff does not allege injury. None of the foregoing allegations rise to the level of an Eighth Amendment violation.

Thus, the Court will dismiss the claims discussed above as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1)

Plaintiff has alleged what appear to be cognizable and non-frivolous excessive force and failure to protect/intervene claims in paragraph 5 against Beckles; in paragraph 6 against Beckles,

17

Guy Fowler ("Fowler"), Lt. Salas ("Salas"), and Sgt. Angelina DeAllie ("DeAllie"); in paragraph 9 against Rispoli, Weber, Lt. Trader ("Trader"), and Cpl. McGinnis ("McGinnis"); in paragraph 12 against Morris and Beckles; in paragraph 13 against C/O Charles Stevens ("Stevens"), C/O Greg Turner ("Turner"), C/O Daynene Scott, ("Scott"), and Bryan; in paragraph 14 against Morris; in paragraph 15 against Harvey, Henry, Mohr, Morris, and Scott; in paragraph 16 against Smith, Henry, Cpl. Parsons ("Parsons"), and Morris;[10] and in paragraph 17 against Baynard, Rispoli, Morris, Henry, Hawkins, Sgt. Steve Floyd ("Floyd"), and Bryant.

### 3.   **Medical Needs**

Plaintiff alleges in paragraph 14 that Bryant did not give him medical care to see if he was injured when was in the shower and shocked by Morris on April 21, 2009.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *See Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). However, in order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle*, 429 U.S. at 104-05.

---

[10]Photos taken of Plaintiff's injuries were displayed by certain defendants but ultimately taken down after complaints by another inmate. The display did not rise to the level of a constitutional violation. (D.I. 2 at ¶ 16)

However, "a prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. *Harrison v. Barkley*, 219 F.3d 132, 138-140 (2d Cir. 2000). An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment or maintains that options available to medical personnel were not pursued on the inmate's behalf. *See Estelle*, 429 U.S. at 107. "[M]ere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

Paragraph 14 alleges that Bryant saw Plaintiff but she did not take his pulse or vitals to see whether the voltage had caused damage. Plaintiff was seen by Bryant, but did not receive the care he thought he needed. Plaintiff is not entitled to the treatment of his choosing, nor does his disagreement with Bryant's treatment implicate a violation of the Eighth Amendment. Therefore, the Court will dismiss as frivolous the medical needs claims against Bryant.

Plaintiff may proceed with the medical needs claim raised against Wiley in paragraph 9.

### D.    Conspiracy

Plaintiff alleges that Commissioner Carl Danberg ("Danberg"), Deputy Commissioner Thomas Carroll ("Carroll"), Bureau Chief Rick Kearney ("Kearney"), Phelps, Pierce, Klein, Scarborough, Costello, Rispoli, and Hawkins began a conspiracy to harm and injure Plaintiff following a January 2, 2009 incident. (D.I. 2 at ¶ 9) Plaintiff alleges "[t]he need for extreme

19

punishment to 'get Dickens' was made more urgent by the fact" that Plaintiff had assaulted a

female guard who was involved in relationships with male staff and administration.[11]

For a conspiracy claim, there must be evidence of (1) an actual violation of a right

protected under § 1983 and (2) actions taken in concert by defendants with the specific intent to

violate that right. *See Williams v. Fedor,* 69 F. Supp. 2d 649, 665-66 (M.D. Pa.), *aff'd,* 211 F.3d

1263 (3d Cir. 2000); *see also Parkway Garage, Inc. v. City of Phila.,* 5 F.3d 685, 700 (3d Cir.

1993) (stating plaintiff must show that two or more conspirators reached agreement to deprive

him or her of constitutional right under color of law); *Kelley v. Myler,* 149 F.3d 641, 648-49 (7th

Cir. 1998) (stating agreement or understanding to deprive the plaintiff of constitutional rights

must exist).

The allegations are conclusory and do not adequately indicate how the defendants acted in

concert to deprive Plaintiff of his constitutional rights. Therefore, the conspiracy claim is

dismissed as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### E.    **Personal Property**

Plaintiff alleges that Floyd, Hawkins, and Baynard confiscated his television on May 6,

2010 without a disciplinary report. (D.I. 2 at ¶ 17)  Plaintiff later discovered that Henry,

Baynard, and Floyd had conspired to take his television.  Plaintiff took the cuffs and cuff key

from Floyd after the foregoing Defendants would not return the television, resulting in an

altercation with the QRT.

---

[11]As punishment for the assault, Plaintiff was placed on twenty-four hour black box restraints and strip cell status.  Orders were given for Plaintiff to be escorted by QRT members whenever he left his cell.  Plaintiff alleges that the acts were meant to cause harm and for retaliation.  (D.I. 2 at ¶ 9)  The allegations are frivolous and will be dismissed.

A prisoner's due process claim based on random and unauthorized deprivation of

property by a state actor is not actionable under § 1983, whether the deprivation is negligent or

intentional, unless there is no adequate post-deprivation remedy available. *See Parratt v. Taylor,*

451 U.S. 527, 542 (1981), *overruled on other grounds by,* 474 U.S. 327 (1986); *Hudson v.*

*Palmer,* 468 U.S. 517, 533 (1984). Plaintiff has available to him the option of filing a common

law claim for conversion of property. Inasmuch as Delaware law provides an adequate remedy

for Plaintiff, he cannot maintain a cause of action pursuant to § 1983. *See Hudson,* 468 U.S. at

535; *Nicholson v. Carroll,* 390 F. Supp. 2d 429, 435 (D. Del. 2005); *Acierno v. Preit-Rubin, Inc.,*

199 F.R.D. 157 (D. Del. 2001).

The claim lacks an arguable basis in law or in fact and will be dismissed as frivolous *See*

*Neitzke v. Williams,* 490 U.S. 319, 325 (1989).

## V. CONCLUSION

For the reasons discussed, Plaintiff may proceed with: (1) the nutra-loaf claim found at

paragraph 10 of the Complaint against Klein; (2) the excessive force and failure to

protect/intervene claims found in paragraph 5 against Beckles; in paragraph 6 against Beckles,

Fowler, Salas, and DeAllie; in paragraph 9 against Rispoli, Weber, Trader, and McGinnis; in

paragraph 12 against Morris and Beckles; in paragraph 13 against Stevens, Turner, Scott, and

Bryan; in paragraph 14 against Morris; in paragraph 15 against Harvey, Henry, Mohr, Morris,

and Scott; in paragraph 16 against Smith, Henry, Parsons, and Morris; and in paragraph 17

against Baynard, Rispoli, Morris, Henry, Hawkins, Floyd, and Bryant; and (3) the medical needs

claim found at paragraph 9 of the Complaint against Wiley. The Court will strike paragraphs 7

and 8 of the Complaint. Finally, the Court will dismiss the remaining Defendants and claims as

21

frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).  Amendment would be futile.

An appropriate Order follows.